396 So.2d 1275 (1981)
Rev. Albert BOURGEOIS, Victoria Taylor, Cora Marzette and Clarence Walker
v.
Rev. Lawrence LANDRUM and Ebenezer Baptist Church of New Orleans.
No. 80-C-2411.
Supreme Court of Louisiana.
April 6, 1981.
*1276 Carolyn N. Hazard and Michael B. McColloster, New Orleans, for plaintiff-applicant.
Sidney H. Cates, IV, of Harris, Stampley, McKee, Lombard & Cates, New Orleans, for defendants-respondents.
DENNIS, Justice.[*]
The issue presented by this case is whether the First Amendment protects a church organized under a state's non-profit corporation law from the enforcement in civil court of a voting member's statutory right to examine the records of the corporation. The trial court sustained the church's exception of lack of jurisdiction over the subject matter of the action. The court of appeal affirmed, 387 So.2d 611 (La. App. 4th Cir. 1980) holding that since the matter at issue is not a dispute over property rights but possible dissension regarding church management, courts lack jurisdiction to intervene. We reverse the court of appeal judgment. A voting member of a non-profit corporation has a right to examine the records of the corporation without stating reasons for his inspection. Since the judicial enforcement of this right does not entangle civil courts in questions of religious doctrine, polity or practice, the First Amendment does not bar a suit to implement the statutory right.
Plaintiffs, members of Ebenezer Baptist Church, a Louisiana non-profit corporation, filed suit against the church and its pastor for a court order allowing them to examine the records which every non-profit corporation is required to keep at its registered office for inspection by its shareholders and voting members at any reasonable time. See La.R.S. 12:223(A) & (C). Their petition alleges that they wish to inspect the records "... in order to see for themselves how much money the church takes in and how the money is spent." The trial court ordered the church and its pastor to permit the examination. After their inspection, however, the plaintiffs were not satisfied that all of the records had been produced. Plaintiffs served interrogatories on defendants seeking information they say was not contained in the records examined. Defendants failed to answer the interrogatories, and plaintiffs sought imposition of sanctions upon them, including punishment for contempt of court. Defendants filed exceptions of no right of action and lack of jurisdiction of the subject matter. The trial court overruled the exception of no right of action, but sustained the exception of lack of subject matter jurisdiction and dismissed plaintiffs' suit.
Plaintiffs appealed to the court of appeal. Our intermediate brethren affirmed the trial court judgment, holding that civil courts have no jurisdiction to intervene in a church dispute unless it is clearly a property dispute. 387 So.2d 611. Since the plaintiffs did not allege mismanagement or misappropriation of property or funds, the court of appeal concluded that the suit was not a property dispute but may instead relate to dissension over church policy matters. We granted certiorari. 394 So.2d 614.
The issues presented are (1) whether a voting member of a non-profit corporation must allege reasons for his requested examination *1277 of the corporation's records and (2) whether a voting member of a church organized as a non-profit corporation may obtain inspection of corporate records in the absence of an existing property dispute.

1.
A voting member of a non-profit corporation has a right, at any reasonable time, to examine the records which the corporation is required to keep at its registered office. The Louisiana non-profit corporation law, La.R.S. 12:201, et seq., in pertinent part, provides:
§ 223. A. Every corporation shall keep at its registered office (1) records of the meetings of its members and directors, and of committees of the board, share and membership records giving the names and addresses of the members in alphabetical order by classes and series and the number of shares held by each, and records of its assets, liabilities, receipts, disbursements, gains, losses, capital and surplus; and (2) separate records of all trust funds held by it. Whenever membership is terminated, this fact shall be recorded in the share or membership record together with the date on which the membership ceased, and transfers of shares shall similarly be recorded.
* * * * * *
C. Every shareholder and voting member may examine in person, or by agent or attorney, at any reasonable time, the records of the corporation listed in subsection A of this section.
The absence of any prerequisite to an examination of the records, except that it must occur at a reasonable time, indicates a legislative aim to make the specified records available to a voting member upon his simple request.

2.
Regardless of whether the present case may be classified as a property dispute, the underlying First Amendment principles, which protect against entanglement of civil courts in questions of religious doctrine, polity or practice, are not offended by the judicial enforcement of a statute requiring a church, as a non-profit corporation, to keep at its registered office, corporate records for examination by its voting members.
The First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. Presbyterian Church v. Hull Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. The First Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. Id. This principle applies with equal force to church disputes over church polity and church administration. Serbian Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). See also, Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
The role that a civil court is required to play in enforcing a voting member's right to inspect the records that his non-profit church corporation is required by the non-profit corporation law to keep at its registered office is severely circumscribed. The records which a voting member is entitled to examine are limited to records of members' and directors' meetings, lists of members, records of assets, liabilities and financial transactions, and records of trust funds. The court is called upon merely to order the non-profit corporation to allow an examination at a reasonable time and perhaps to determine whether the corporation has complied with its judgment.
First Amendment values are plainly not jeopardized by a civil court's enforcement of a voting member's right to examine *1278 these records. Cf. Synanon Foundation, Inc. v. California, 444 U.S. 1307, 100 S.Ct. 496, 62 L.Ed.2d 454 (Rehnquist, J. in chambers). No dispute arising in the course of the litigation requires the court to resolve an underlying controversy over religious doctrine. The proper judicial function in such a case presents no hazard to the free development of religious doctrine or of implicating secular interests in matters of purely ecclesiastical concern.
Accordingly, the judgments of the court of appeal and the trial court sustaining the exception of lack of jurisdiction are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] The Honorable Gerald P. Fedoroff participated in this decision as Associate Justice ad hoc.