679 So.2d 1034 (1996)
Judy DUNNE
v.
WAL-MART STORES, INCORPORATED and Diversified Products Corporation.
No. CA 95 2047.
Court of Appeal of Louisiana, First Circuit.
September 10, 1996.
*1036 R. Ray Orrill, Jr., New Orleans, for Plaintiff/Appellant, Judy Dunne.
Nelson W. Wagar, III, Metairie, for Defendants/Appellees, Wal-Mart Stores, Inc., and Diversified Products Corp.
Before CARTER, LeBLANC, WHIPPLE, FOGG and KUHN, JJ.
WHIPPLE, Judge.
Plaintiff, Judy Dunne, appeals the judgment of the trial court in favor of defendants, Wal-Mart Stores, Incorporated (Wal-Mart) and Diversified Products Corporation (DP), dismissing her claim for damages. For the following reasons, we reverse and render.

FACTS AND PROCEDURAL HISTORY
On February 2, 1991, plaintiff's children purchased an Aero Cycle exercise bike for their mother to use in a weight loss program. The Aero Cycle bike was manufactured by DP and purchased from Wal-Mart, located in Slidell, Louisiana. When plaintiff received the bike, she rode it only for a moment. On August 16, 1991, plaintiff used the bike for the second time. She mounted the bike and pedaled for three or four rotations. The rear leg tubing and/or the connection between the rear leg tubing and the support strut failed and the bike collapsed under plaintiff. At the time of the accident, plaintiff weighed between 450 and 500 pounds. She fell off the bike backwards, struck her head on a nearby metal file cabinet and was knocked unconscious. When plaintiff regained consciousness, her mouth was bleeding and her neck, left shoulder, arm, leg, knee and ankle were injured.
Plaintiff was treated by a physician on the day of the accident. She was diagnosed as having a cervical strain and multiple contusions. She was given a prescription for a muscle relaxer and an analgesic. On August 22, 1991, she was also seen by her regular family physician with complaints of pain, dizziness, numbness and sensitivity to light. Although additional medical evaluation and therapy were suggested, plaintiff failed to seek additional medical care because she was unable to afford it until April 17, 1992. On that date, plaintiff was referred to Dr. Debra Burris, a neurologist, for further evaluation. Plaintiff was evaluated by Dr. Burris on May 21, 1992. She complained of neck pain and headaches. Dr. Burris prescribed physical therapy, a muscle relaxant and an anti-inflammatory and advised plaintiff to return for re-evaluation in six weeks. Plaintiff did not return.
Plaintiff filed suit against Wal-Mart and DP. At the time of the trial, plaintiff still had complaints of neck pain and tingling, numbness and spasms in her left arm and hand, with slight swelling and muscle spasms in her right hand. Following trial on the merits, the trial court found that plaintiff failed to carry her burden of proving that the product was unreasonably dangerous as the use of the bike by someone weighing 500 pounds was not a reasonably anticipated use of the product. From this judgment, plaintiff appeals, urging the following as error:
1. The trial court's failure to find the Aero Cycle unreasonably dangerous because an adequate warning was not provided as required under LSA-R.S. 9:2800.54B(3) and LSA-R.S. 9:2800.57 was manifestly erroneous.
2. The trial court erred in failing to award the plaintiff damages for her injuries.

LIABILITY
On appeal, plaintiff contends that the trial court was manifestly erroneous in its finding that use of the Aero Cycle by an obese person like plaintiff was not a reasonably anticipated use of the product. We agree.
*1037 The Louisiana Products Liability Act (LPLA) establishes the exclusive theories of liability for manufacturers for damages caused by their products. LSA-R.S. 9:2800.54(A) sets forth the threshold elements which must be proven by a claimant, providing as follows:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
A "reasonably anticipated use" means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances. LSA-R.S. 9:2800.53(7). This definition is narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonable foreseeable uses and misuses of the product." Myers v. American Seating Company, 93-1350, p. 7 (La.App. 1st Cir. 5/20/94); 637 So.2d 771, 775, writs denied, 94-1569, 94-1633 (La. 10/7/94); 644 So.2d 631, 632. Under the current definition contained in the LPLA, a manufacturer is not responsible for accounting for every conceivable foreseeable use of a product. See Myers, 93-1350 at 8; 637 So.2d at 775.
The trial court, relying primarily on John Kennedy's law review article, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565 (1989), concluded that "the use of this exercise bike by a woman of 500 pounds was not reasonably anticipated by [DP]." The trial court also cited the testimony of Mr. David Newton, the Consumer Affairs Manager for DP. Newton testified that DP manufactured the Aero Cycle to withstand use by adults weighing up to 250 pounds, as this encompasses greater than 98.5 percent of the United States adult population. Further, Newton stated that DP adheres to the American Society for Testing and Materials (ASTM) standards and that all DP products are tested and required to meet ASTM standards. He opined that because a prototype of the Aero Cycle was tested to a load of 440 pounds for five minutes with any resulting deflection within the 0.5 inch tolerance, a maximum load capacity warning was not required by the ASTM standards.
Initially, we note that DP is not automatically absolved of liability because it complied with the ASTM standards in not placing a maximum load capacity warning on the Aero Cycle. The ASTM standards, while relevant factors to be considered, are not determinative of the issue of liability. See Dill v. State Department of Transportation and Development, 545 So.2d 994, 996 (La. 1989).
More importantly, our review of the trial court's reasons for judgment convinces us that the trial court committed legal error in applying the provisions of LSA-R.S. 9:2800.53(7). Instead of considering whether plaintiff was engaged in a "reasonably anticipated use," the trial court considered whether plaintiff was a "reasonably anticipated user." In rejecting plaintiff's claim, the trial court quoted Kennedy's observation in the law review article that a manufacturer should not reasonably expect that an ordinary consumer will use a soft drink bottle for a hammer, attempt to drive an automobile across water or pour perfume on a candle to scent it. However, unlike these illustrations, there was no misuse of the product by plaintiff in this case. In fact, the record demonstrates that plaintiff used the product in a manner wholly consistent with its intended use. The Aero Cycle exercise bike was designed and marketed by DP primarily for use by overweight individuals. Plaintiff, an overweight person, was the type of consumer targeted by DP. The mere fact that plaintiff was considerably overweight does not place her in a category of persons for whom DP has no responsibility.
Accordingly, we find that the trial court's conclusion that the use of the Aero Cycle by plaintiff was not a reasonably anticipated use of the product was based on reversible legal error. The record shows that plaintiff's damages resulted from a reasonably anticipated use of the product.
Having so concluded, we must now conduct a de novo review of the record and make our *1038 own determination of plaintiff's claims. See Dawson v. City of Bogalusa, 95-0824, p. 4 (La.App. 1st Cir. 12/15/95); 669 So.2d 451, 453.
In the instant case, plaintiff based her claim on the theory of liability contained in LSA-R.S. 9:2800.54(B)(3): that the Aero Cycle was unreasonably dangerous because an adequate warning was not provided.[1] Pursuant to LSA-R.S. 9:2800.57, liability may be imposed on a manufacturer because a product is unreasonably dangerous due to the lack of an adequate warning. LSA-R.S. 9:2800.57 provides, in pertinent part, as follows:
A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
B. A manufacturer is not required to provide an adequate warning about his product when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
It is undisputed that there was no maximum weight limit warning accompanying the Aero Cycle. The issue for our consideration at this point is whether, under LSA-R.S. 9:2800.57(A), DP was required to warn. As Kennedy correctly notes in A Primer on the Louisiana Products Liability Act, 49 La.L.Rev. 565, 616 (1989), section 2800.57(A) does not change Louisiana law, and as required by prior law, a manufacturer must use reasonable care in deciding whether to warn. In this case, according to David Newton, the Aero Cycle was not designed for use by individuals weighing over 250 pounds. The cover of the owner's manual contains other safety information and warnings and it was entirely feasible for DP to have included a statement or warning that the product should not be used by persons weighing over 250 pounds. Plaintiff had no reason to know that the Aero Cycle would not sustain her weight as she previously had used a similar exercise bike for several years without incident. Therefore, in light of DP's admission that the Aero Cycle was only intended to have a limited use, we find that plaintiff proved that DP failed to exercise reasonable care by failing to place a limited use warning on the Aero Cycle.
Pursuant to LSA-R.S. 9:2800.57(B), there are two circumstances when the manufacturer does not have a duty to warn. A warning is not required when the danger would be obvious to an ordinary reasonable user of the product or when a claimant already knows or should know of the danger. LSA-R.S. 9:2800.57(B)(1) & (2); Winterrowd v. Travelers Indemnity Company, 462 So.2d 639, 642 (La.1985). Here, there is absolutely no evidence contained in the record that the danger was obvious or that plaintiff knew or should have known of the danger.
Accordingly, for the above and foregoing reasons, we find that DP failed to exercise reasonable care by failing to warn users that the Aero Cycle had a maximum weight limitation. This failure by DP to warn rendered the product unreasonably dangerous, causing plaintiff's accident and injuries. Moreover, our review of the record convinces us that plaintiff was free from fault as she testified unequivocally that she read *1039 the owner's manual before she used the product and that she would have heeded a warning if one had been provided. Also, it is undisputed plaintiff was using the Aero Cycle properly. Accordingly, we find DP solely at fault in causing plaintiff's damages.[2]
This assignment of error has merit.

DAMAGES
The remaining issue for our determination is the amount of damages which will adequately compensate plaintiff.
To be entitled to recover damages, a plaintiff must prove by a preponderance of the evidence a causal nexus between the accident and injuries. Brumfield v. Guilmino, 93-0366, p. 8 (La.App. 1st Cir. 3/11/94); 633 So.2d 903, 909, writ denied, 94-0806 (La. 5/6/94); 637 So.2d 1056. The record contains the following evidence concerning the injuries sustained by plaintiff as a result of the accident.
Plaintiff testified that when the Aero Cycle collapsed, she fell to the floor and was rendered momentarily unconscious. When plaintiff regained consciousness, she realized that she had struck her head on a file cabinet and noticed that her mouth was bleeding. Plaintiff stated that she was in pain and could not get off of the floor. Later that day, she was seen by Dr. Weiss, an associate who worked for her family physician, with complaints of an injury to the back of her head, neck, left shoulder and arm, and left knee and ankle. Dr. Weiss took x-rays and instructed plaintiff to apply heat and ice to the injured areas.
On August 22, 1991, plaintiff saw her family physician, Dr. Frank Guidry, Jr., with continued complaints of pain in her neck, dizziness, sensitivity to light, pain in the left arm, and numbness in the left fingers. After reviewing Dr. Weiss' notes, Dr. Guidry's impression was that plaintiff had sustained a cervical strain with multiple contusions. He prescribed bed rest, an analgesic and a muscle relaxant. Dr. Guidry also suggested that plaintiff be evaluated by Dr. Vogel, a neurologist who had performed neck surgery on plaintiff in 1979. Plaintiff explained that she could not afford the office visit and never made an appointment with Dr. Vogel. Instead, plaintiff attempted to relieve her pain with over-the-counter medications, hot soaks, heat packs and ice packs.
Plaintiff was evaluated by Dr. Debra Burris, a neurologist, on May 21, 1992. Plaintiff complained of neck pain, numbness in the hands and fingers and headaches. Her neurological examination was normal. Dr. Burris opined that while structural damage to a disc was possible, plaintiff had probably sustained a soft tissue injury. Dr. Burris prescribed physical therapy, a muscle relaxant and an anti-inflammatory. Plaintiff was instructed to return in six weeks, but never did so.
At trial, plaintiff testified that the contusions healed in approximately one month, but that she continued to have pain in her neck and numbness primarily in her left hand and arm, with some numbness and spasm in her right hand. Dr. Burris testified that continued presence of these symptoms, even through the time of trial, was not atypical for a soft tissue injury and that it is not uncommon for a patient to experience these symptoms for a substantial period of time post-accident.
Based on the above and foregoing evidence, we find that plaintiff proved by a preponderance of the evidence that as a result of the fall, she sustained multiple contusions and a cervical strain for which she sought minimal treatment. Plaintiff relied on over the counter medications to relieve her pain because she testified she could not afford medical treatment.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which are incurred as a result of an *1040 injury. Daigle v. United States Fidelity and Guaranty Insurance Company, 94-0304, p. 13 (La.App. 1st Cir. 5/5/95); 655 So.2d 431, 440. We are unable to find that plaintiff proved entitlement to future medical expenses by a preponderance of the evidence. However, plaintiff is entitled to recover the following past medical expenses which were incurred as a result of the accident:

Dr. Robert U. Weiss $175.00
Dr. Frank J. Guildry 110.00
Dr. Debra L. Burris 125.00
Wal-Mart Pharmacy 59.72
 TOTAL $469.72

Judgment is hereby rendered in favor of plaintiff in the amount of $469.72, representing an award for past medical expenses.
Plaintiff is also entitled to a general damage award. General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured definitively in terms of money. Daigle, 94-0304 at 7; 655 So.2d at 437. Based on the above outlined testimony and our independent review of the appellate record herein, we find that an award of $10,000.00 will adequately compensate plaintiff for her general damages.
Finally, plaintiff contended at trial that she was entitled to an award for past lost income. According to plaintiff, she is a breeder of AKC chihauhuas and as a result of the accident, she was unable to breed her dogs resulting in a claimed loss of $5,200.00. A claim for past lost wages must be established with certainty. Revel v. Snow, 95-462, p. 12 (La.App. 3rd Cir. 11/2/95); 664 So.2d 655, 661, writ denied, 95-2820 (La. 2/2/96); 666 So.2d 1084. On cross-examination, plaintiff testified that she had never declared any income from dog breeding on her prior income tax returns. Further, she stated that her dog breeding business had not been profitable in the past. Finally, plaintiff admitted that in her deposition she stated that she bred dogs as a hobby. Based on this evidence, we cannot find that plaintiff proved her entitlement to past loss income by a preponderance of the evidence, and we decline to make an award for this element of damages.
Accordingly, based on our independent de novo review of the appellate record, we hereby make the following awards in plaintiff's favor: $469.72 for past medical expenses and $10,000.00 for general damages.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court dismissing plaintiff's suit is hereby reversed and judgment is hereby rendered as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff-appellant, Judy Dunne, and against defendant-appellee, Diversified Products Corporation, in the amount of $10,469.72, plus interest from the date of judicial demand until paid. All trial costs and costs of this appeal are to be paid by defendant-appellee.
REVERSED AND RENDERED.
LeBLANC, J., dissents and assigns reasons.
LeBLANC, Judge (dissenting).
I do not agree with the majority's analysis.
At trial, Mr. Newton, the Consumer Affairs Manager for the manufacturer, stated the bike was designed to withstand use by adults weighing 250 pounds, as this encompasses greater than 98.5 percent of the United States adult population, and was tested to a load of 440 pounds. Ms. Dunne testified her weight was close to 500 pounds at the time of the accident.
The evidence established that use by Ms. Dunne was not a use the manufacturer should "reasonably expect of an ordinary person". La.R.S. 9:2800.53(7). From the viewpoint of the manufacturer, use by someone weighing 500 pounds was not a reasonably anticipated use. Therefore, I respectfully dissent.
NOTES
[1] LSA-R.S. 9:2800.54(B)(3) provides:

B. A product is unreasonably dangerous if and only if:
* * * * * *
3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; ...
[2] Although not formally assigned as error, plaintiff argues in her appellate brief that "the defendant, Wal-Mart Stores, Incorporated, is also liable as the vendor of the Aero Cycle under the provisions of [LSA-C.C. art. 2475] in which a seller is bound to warrant the thing which he sells." Plaintiff contends that "defendants [DP and Wal-Mart] should be held accountable to the plaintiff for the damages she sustained." However, under the provisions of LSA-C.C. arts. 2475 and 2531, plaintiff is not entitled to recover against Wal-Mart.